(Clark County, Ohio, Probate Court.)

THE OHIO SOUTHERN RAILROAD COMPANY v. J. and D. SNYDER.

---

*Condemnation—*

(1). Compensation—a. What time value to be fixed—b. What is market value—c. Situation of parties not to effect—d. How proven—e. When narrow strip—f. When has no general market value—

(2). Injury to remaining land—a. What are remaining lands—b. How proven—c. Matters to be considered—d. Statutory regulations—e. Law of adjoining landowners applies—ee. Must presume R. R. will be properly built, etc.—f. Definition of "Compensation" and "Damages"—g. Actual injury the basis—h. Local benefits—i. Affording access to tramps—j. Special benefit—new use—k. Rights in highway—l. Interference with ditches, etc.—m. Opinion of witness as to amount of—n. Conflict of testimony, etc.—o. View of premises—p. Sympathy, etc.—r. Rights of parties—

---

*Charge to Jury.*

Gentlemen of the Jury:

First. By your oaths administered to you in the case before you, in arriving at your verdict you are required, first, to assess, according to your best judgment, the amount of compensation due the property owners, the defendants herein, for the property sought to be appropriated by the Ohio Southern Railroad in these proceedings, which is a strip from 66 to 76 feet wide through their lands, and the land for a Y switch, irrespective of any benefits that may result to

such owners by reason of the building and operating of the proposed railroad.

It is no matter, if in your opinion the remaining portion of the owner's property would be enhanced in value by the reason of the building of this railroad, in an equal or greater sum than the value of the land appropriated, yet the owners are entitled to receive from the railroad company the fair market value of the property so appropriated.

a. This market value is to be fixed at the time the property is appropriated, and in this case, that is the present time; and this price or value is not to be increased upon the necessity of the plaintiff on the one hand, to have this property, nor on the other, diminished from the necessity of the owners to dispose of it.

b. The market value is the selling value.

It is the price which an article will bring when offered for sale in the market.

It is the highest price which those having the ability and occasion to buy are willing to pay. The owner in parting with his property to the railroad company, is entitled to receive as compensation just such an amount as he could obtain if he were to go upon the market and offer the property for sale. I do not mean the price he would realize at forced sale upon short notice, but the price he could obtain after a reasonable time and notice, such as would ordinarily be taken by an owner to make a sale.

Market value is not what a piece of property can be bought at by taking advantage of the necessities of the seller, nor by bringing the property to sale under foreclosure. Such situations have a tendency to diminish the value of the property. Nor on the other hand is it fair to make as a standard of value the case where the buyer may be compelled to take the property by reason of some unusual surroundings or circumstances.

Sales which fix a market value imply a buyer and seller both of whom are free to act, and neither of whom act under any compulsion or pressure of circumstances.

c. The fact that the owner may be so situated financially or otherwise, that a fair sale would be of great advantage to him, or that the railroad company is so situated in order to properly locate and build its line of road or otherwise that it must have this property, should not be considered by you in any manner whatever.

The market value of the real estate must as a general rule be ascertained from sales either of property out of the same tract, sought to be appropriated, or of property in the immediate vicinity having substantially the same surroundings and the same conditions.

d. Witnesses called to prove these matters are first qualified by showing that they have a general knowledge of the tract sought to be appropriated, the relation it sustains as to its value, whether equal or greater to the surrounding lands, which have recently been sold at their market value. This having been shown, the witness may be asked his opinion as to the value of the land sought to be appropriated, and on cross-examination he may be required to state upon what he bases his opinion, so that you, the jury, may know what weight to attach to his opinion.

Likewise, persons dealing in real estate in the neighborhood or living in the vicinity may give their opinion as to the value of the tract sought to be appropriated, and on cross-examination it may be shown to you upon what they ground their opinions, so that you may know what weight to give to them in forming your verdict.

The value of their opinions depend upon their experience, their knowledge, their opportunities for knowing and forming an opinion, and on their honesty, fairness and good judgment. You are not to put the value any higher than its fair market value, because the owner fixes a sentimental value on it: nor because he has lived on the land a long time and is attached to it.

e. The land sought to be appropriated in such a proceeding as this, may, by reason of its awkward oblong shape, surroundings and the limited uses to which it be applied, and from the fact that buyers or sellers of such a tract, or tracts, are so very limited, be such that it can hardly be said to have general market value if considered as a separate and independent tract. Sellers at a fair market value there might be none; purchasers none but railroad corporations. If such be the case, and the lands sought to be appropriated has no general market value, in ascertaining the amount of compensation that should be allowed the owner, it would be proper to consider the market value of the lands immediately adjoining, and if the land appropriated be of the same quality capacity and character as such adjoining lands it would have the same market value: or if the land appropriated be of the same average quality, capacity and character of that of the entire tract of which it is a part, it will have the same market value per acre the entire tract has, and should be so considered in allowing compention to the owner.

To this should be added or subtracted, as the case might be, the difference of value, per acre, if any, resulting alone from the fact that one is a large and the other a small body of land. But the mere fact that the land appropriated is a small tract or narrow strip in or through the defendants' land neither adds to nor detracts from the amount to be allowed defendants as compensation therefor.

f. If the land sought to be appropriated

has no general market value, and the value cannot be determined from that of the adjoining or neighboring lands, then its value can only be ascertained from the land itself, which is in evidence in this case, and from witnesses whose skill and experience enable them to testify directly to such value in view of the hazards and chances and the business to which the land is devoted. The second matter which by your oath, you are required to do, is to determine according to your best judgment, how much less valuable the remaining portion of the defendants' property will be worth by reason of this appropriation and the building and operation of the proposed railroad. In this case the defendants, John and David L. Snyder are the joint owners of large bodies of land near to and adjoining this appropriation. It therefore becomes important to know what land are to be included as remaining lands to which lands, if injuries result from the building and operation of this railroad and the appropriation, damages may be allowed these defendants.

The plaintiff in its petition describes the land sought to be appropriated in five different tracts. The defendants, by maps and evidence introduced, claim that there are but two different tracts. You are not bound to accept either. Tracts two and three, in the petition described, are a continuous line of the road through one contiguous body of land of 595 cares herein usually referred to as the "lower farm". But the mere fact that it is continguous will not alone entitle it all to be considered as remaining lands to tracts two and three. But the manner in which the owners use it largely determines this fact. If they use it as one farm, as one entire tract, in their enjoyment of it, then all should be considered as remaining lands to the lands appropriated in tracts two and three in the petition described. If some part however, is a part of another farm, not used in connection with the lands sought to be appropriated, such part should not be considered.

Tracts four, five and six, in the petition described, are parts of a connected tract of some four hundred and twenty acres of land, in this case usually referred to as the "upper farm", and not adjoining the 595 acres before mentioned. While the land is connected, the tracts four, five and six do not form a continuous line of the railroad, tract four being separated from five and six by the lands of others.

Here the same rule is to be applied as to the 595 acre tract.

If this is all used as one entire tract, as one farm, then it should be so considered, and would all be remaining land within the meaning of the statute. But if tracts, 4, 5 and 6, one or each, are parts of separate and distinct tracts, or farms, then each should be considered separately and distinctly.

Only lands can be considered as remaining lands to which damage may be allowed which adjoin and, in their use and enjoyment, are connected with the lands sought to be appropriated. And if any part of the 420 acre tract is a part or the whole of another farm belonging to these defendants, not used or connected with the lands sought to be appropriated, such farm or part of farm should not be considered in your estimate of damages to the defendants herein for injuries resulting to their remaining lands.

b. The damage to the remaning lands, may be shown by similar evidence and under like rules as that produced or competent to show the value of the lands appropriated. In considering this question, it will be competent for you to consider the fact whether or not fields, either for grazing or agricultural purposes, are divided into irregular or inconvenient parcels, whether more or costlier fencing will be required, bearing in mind however that by law, the railroad company must fence (c.) and keep fenced its own tracts: What inconvenience from having the farms divided in several parcels, detached from each other by the railroad, may result to the owners of such farms: Whether the ingress or egress from the fields or detached tracts or remaining lands will be injuriously affected or destroyed, taking into consideration that by law, the railroad must construct and maintain proper crossings: whether any part is cut off from water; whether the railroad bed is a dangerous embankment or an injurious excavation: whether additional overflow will be caused or drainage interferred with.

Assuming that the railroad company will construct necessary and proper culverts, and that in bridging streams, it will make waterways of sufficient capacity and so place the piers and abutments as not to do injury to the adjacent lands.

Whether the defendants' remaining lands will be diminished in value, and if so, how much, by danger from fire to the buildings, fences or crops thereon, or that stock may be killed; taking into consideration the fact that these injuries usually occur by reason of the use of defective machinery, or the negligent construction and maintenance of the fencing along its tract, or the improper conduct of its servants in the operation of the railroad, and the management of its trains, and that for such injuries or losses the company is liable, and that the person sustaining the same, may in an action against the railroad company receive the full amount of his losses. But the owner is not entitled to damage from fire to buildings unless the danger be such as is imminent and appreciable.

In short, whatever of actual, not remote and purely speculative injury is caused by the building and operation of this railroad, through the defendants' lands, to

them as owners of such lands and not in common with the public at large, should be considered by you in estimating what damage, or how much less valuable the remaining portions of their lands will be worth by reason of this appropriation.

d. The legislature of Ohio has by statute provided that the railroad must properly construct and maintain fencing along its track: That upon the application of the owner where he owns more than 15 acres of land, which applies in this case the railroads must construct crossings: that there shall be kept up and maintained along its road bed proper ditches, etc., drains to conduct to some proper outlet the water which accumulates along the sides of such roads:

That during the construction of the road proper crossings shall be provided and fences built and stock etc., protected.

For a violation of these statutory enactments an action at law lies, and recovery may be had against the company for the damages sustained and should be considered by you in determining how much less valuable, if any, the remaining lands will be worth with the appropriation thereon than they are without.

e. In the use and occupation of the land appropriated the railroad will, in addition to the statutory enactments above herein referred to, be subject to and controlled by the law applicable to the adjoining landowners, and if it violates any duty thus placed upon it, full recovery may be had against it for all damages occasioned.

Likewise, if a new and different use of the lands appropriated should be made by the railroad, which would result injuriously to the land owner, or a damage should occur from some act or cause, not contemplated in the appropriation, an action would lie, and the full amount of damages sustained could be recovered.

ee. In estimating the depreciation of the adjoining land of the proposed right of way, you are not to consider any damage which result from the improper construction of the road, as it must be presumed that the road will be built in the most approved manner, and skillfully and properly operated.

In these appropriation proceedings the term "compensation" and "damages" have different and distinct meanings.

Compensation means the sum of money which will compensate the owner for the land actually taken or appropriated. That is, it is the market value of the land taken, irrespective of any benefits that may result to the remaining lands by reason of the construction of the proposed railroad.

"Damages" is an allowance made for any injury that may result to the remaining lands by reason of the construction of the proposed railroad, after making all due allowances for benefits, etc., resulting thereto. In estimating how much less valuable the residue of the property is by

reason of the appropriation, you are not to take into consideration remote and purely speculative damages. But the actual injury which the land sustains must be the basis.

g. If you find from the evidence that there is any local benefit arising from the construction of the railroad, and this benefit is connected with or blended with any damages caused to the lands, the benefits and damages arising out of the same lands, then the benefits may be considered to reduce the damages that may be connected with it.

If some parts of the defendants' lands are affected injuriously and other parts beneficially, by what are known as special benefits, both or all should be considered, and the amount which the injuries or damages exceeds the benefits, would be the proper sum to award to the respective landowners as their damages herein.

h. Likewise: When a local incidental benefit to the residue of land, is blended or connected, either in locality or subject matter, with local incidental injury to such residue of the land, the benefit may be considered in fixing the compensation to be paid the owner, n ot by way of deduction from compensation, but of showing the extent of the injury done the value of the residue of the land.

i. You should not consider as an element of damages to the remaining lands, any claim based upon the said right of way, affording tramps access to the premises of the defendants' lands. Such damages are remote and speculative, and beyond any probability of ascertainment, known to the law.

j. In considering what compensation shall be made the defendants, for damages to their remaining lands, on the farm or upper farm, you should consider the uses such lands are now put to, and also such reasonable use that such lands could be advantageously put to at or about the present time, or the immediate future.

You should not consider remote or speculative benefits that may be conferred on said lands by the building of said proposed railroad. Such as that some parts of said land may, at some time; be needed for stock yards, elevators, etc; neither are you to consider benefits of a general nature, such as a supposed enhancement of the value of the remaining lands by increased facilities for travel or transportation, or the growth of towns. But if a new use is conferred upon the remaining lands by the building and operation of the proposed railroad, specially applicable to such lands alone, be it for the purpose of stock yards, elevators, manufacturing establishments, a mill or a stone quarry, and such new use adds to or increases the market value of such remaining lands, such is a special beneficial use, and should be considered by you in determining how much less

valuable such lands are worth by reason of such appropriation.

k. As owners of the property abutting on the Bechtle road, the defendants have a special property in such road, and are therefore entitled to full compensation for the land therein appropriated, belonging to them, subject to the easement of said road, and in addition thereto for any injury to the value of their said remaining lands which may be caused by the building of the proposed railroad on said road at the Bechtle bridge. But the injury must be such as specially applies to them in the use of their said lands, and not such as is suffered by them in the use of such road in common with the public at large.

Thus the inconvenience and annoyance caused them by crossing the railroad at said bridge on said highway in going to and fro from the said lands to the city of Springfield will not be an injury for which damage can be allowed them. But such inconveniences as result to them in the use of their lands, in getting access thereto, or from going from one adjoining tract to another, is an injury for which damages may be allowed.

l. And you may assume in considering what compensation shall be made the defendants for damages to their remaining lands, on the upper farm or the lower either, that when a blind, tile or open ditch or ditches now cross or lead to the lands of the railroad company herein sought to be appropriated, that the railroad company will by culverts, bridges or otherwise provide a proper passage way or outlet for the water collecting and accustomed to flow in and through such blind, tile or open ditch or ditches, unless you find that the construction of such culverts, bridges, or other proper outlet is inconsistent with the proper construction and operation of such railroad. If you find that the proper construction of the railroad requires that no such bridge, culvert, or other proper outlet be made for such ditch or ditches, then there may result an injury therefrom to these lands of the defendant for which damage should be allowed.

If such bridge, culvert or other proper passage-way or outlet, should in the proper construction of the railroad be made, having regard both to the efficiency of the work, on the one hand, and the rights of the landowner on the other, you must assume it will be made, and if the same be not made, and damages result to the defendant therefrom, an action of law will lie therefor, and the full amount of damages sustained recovered

And the only damages that could be allowed to defendants therefore, would be the amount that the possibility of having a difficulty or law suit with the railroad, would depreciate the value of such lands,

If you find that the special benefits to the lands of defendants, arising from the building and operating of the railroad in a legal and proper manner, will be equal to or more than equal to the injury arising therefrom: that is, if the remaining lands would bring as much or more in the market—have an equal market value after the construction of the proposed road, or with the appropriation, as before, excluding benefits of a general nature; you should of course allow the defendants nothing by the way of damages, but still allow them the market value of the land actually taken. Injuries or inconveniences resulting to these defendants from this appropriation and the construction of the proposed railroad, in common with the public at large, with the people in general in the neighborhood, or those who have occasion to be in that vicinity, are not matters for which the defendants are entitled to damages.

Neither are the inconveniences of crossing and re-crossing the railroad on the public highway, which are shared by the public generally—those who use the highway in a general manner, to be considered. But only those injuries or inconveniences as especially apply to them in the use of their lands for the use and purposes for which they are adapted are a proper subject for damages.

Only such are to be considered which they suffer as owners of these lands through which the appropriation is made, and by reason of being such owners.

It was proper that witnesses were permitted to testify as to the various matters which would result injuriously or beneficially to these defendants' lands, from the building and operating of this railroad in a legal and proper manner as proposed. But they were not permitted to testify or give their opinion as to the amount of these damages or benefits.

These are matters for the jury to determine.

You are to decide how much less valuable the remaining portion of their property is worth with this appropriation made as well as the value of the land actually taken or appropriated.

You are the sole judges of what weight is to be given to the testimony of the various persons who have testified in this case: when the same is in conflict, it is your duty to reconcile it so far as possible.

In weighing the testimony of the witness, you are to consider the bearing of the witness on the stand, their evident bias or prejudice one way or the other, and you are not to take the average testimony of the witnesses in making up your verdict; this is not the true rule to ascertain the matters for your determination: But you are to weigh the evidence of each witness carefully, and decide from his credibility and from your view of the premises what the verdict will be.

Neither should you by any means of

chance determine the amount of your verdict, but let it be a calm and deliberate conclusion, to arrive at which, you have exercised thought and reason, and have given just weight and fair consideration to all the evidence before you.

The burden of proof rests with the defendants, and your verdict should be sustained by a fair preponderance of the evidence.

You were ordered to view the land sought to be appropriated in this case. This was for the purpose of enabling you better to determine the questions before you, and to apply your own judgment in regard to them, as well as to better understand the evidence. And if any one of you knows of any fact of his own knowledge, not common to all, bearing upon the case, he ought to disclose it, and testify to it in open court.

In arriving at your conclusions, however, you should take counsel of your own experience and knowledge of like subjects, and should not only consider what the witnesses have testified to, but what you have seen in the view. And if witnesses have testified to matter of opinion which you in the exercise of your judgment and sense, do not believe, such testimony may be disregarded.

In making up your verdict you are to consider both the facts appearing to you from the view of the land sought to be appropriated, and the evidence adduced.

In considering all the questions before you in this cause, I trust it is needless for me to add that neither sympathy nor prejudice should have any part in your deliberations or in the formation of your conclusions. The fact that the plaintiff is a corporation seeking to appropriate the property by the consent or against the will of the owner, or that the defendant is a resisting landowner, entitles neither part to credit or favor.

Before the law and before you, plaintiff and defendants stand on a plane of perfect equality.

The power to take private property for public uses belongs to every civilized government. The defendants and all their predecessors in the ownership of these lands have held it subject to the exercise of this right: so it was purchased from the government. And the government may exercise the right itself, or delegate it to another. It has by legislative enactment and judicial sanction declared that the using of property for the building of a railroad is a public use, and has delegated its right to appropriate the defendants' property herein, to the plaintiff.

The plaintiff therefore is simply seeking to enforce a right as well founded as that of the ownership of the property itself.

It is howeevr proclaimed by the organic law of our commonwealth, that if the government, by itself, or through one to whom this power has been properly delegated, exercises its right to appropriate the property of another, the owner must receive full compensation. It says to the plaintiff herein, "you may take the defendants' property, but you must fully compensate him".

And this is your sole province in this case.

You should allow the defendants, such sum as will financially fully compensate them for their property taken or injured.

Nothing more, nothing less.